

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 2116-CV25672 |
|---|---|
| Plaintiff/Petitioner:<br>JAMIE L INGRAM<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>ERIC WATKINS SMITH<br>1621 BALTIMORE AVENUE<br>KANSAS CITY, MO 64108 |
| Defendant/Respondent:<br>DICK'S SPORTING GOODS, INC. | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to:** DICK'S SPORTING GOODS, INC.
**Alias:**

CSC-LAWYERS INCORPORATING SERV
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101

# PRIVATE PROCESS SERVER

COURT SEAL OF

*CIRCUIT COURT OF MISSOURI*

*JACKSON COUNTY*

   You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

<u>24-NOV-2021</u>
Date

_____
Clerk

Further Information:

---

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____     _____
                              Date                          Notary Public

| Sheriff's Fees | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ | ( _____ miles @ $ _____ per mile) |
| **Total** | $ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 21-SMCC-11152** 1 of 1Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:22-cv-00026-SRB   Document 1-2   Filed 01/14/22   Page 1 of 27

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

Circuit Court of Jackson County

6/2020

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

JAMIE L INGRAM,

                    **PLAINTIFF(S),**           **CASE NO. 2116-CV25672**
**VS.**                                           **DIVISION 13**

**DICK'S SPORTING GOODS, INC.,**

                    **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE AND ORDER FOR MEDIATION

---

    NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **CHARLES H MCKENZIE** on **07-MAR-2022** in **DIVISION 13** at **08:30 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

    A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

    At the Case Management Conference, counsel should be prepared to address at least the following:

    a.    A trial setting;

    b.    Expert Witness Disclosure Cutoff Date;

    c.    A schedule for the orderly preparation of the case for trial;

    d.    Any issues which require input or action by the Court;

    e.    The status of settlement negotiations.

Case 4:22-cv-00026-SRB   Document 1-2   Filed 01/14/22   Page 3 of 27

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ **CHARLES H MCKENZIE**
CHARLES H MCKENZIE, **Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
RYAN PATRICK MCENANEY, 1621 BALTIMORE AVENUE, KANSAS CITY, MO 64108

RAYMOND ALLAN DAKE, 1621 BALTIMORE AVENUE, KANSAS CITY, MO 64108

ATHENA M BRACKMANN DICKSON, SIRO SMITH DICKSON PC, 1621 BALTIMORE AVENUE, KANSAS CITY, MO 64108

RIK N SIRO, 1621 BALTIMORE AVENUE, KANSAS CITY, MO 64108

ERIC WATKINS SMITH, 1621 BALTIMORE AVENUE, KANSAS CITY, MO 64108

Defendant(s):
DICK'S SPORTING GOODS, INC.

Dated: 24-NOV-2021

MARY A. MARQUEZ
Court Administrator

Case 4:22-cv-00026-SRB   Document 1-2   Filed 01/14/22   Page 4 of 27

Electronically Filed - Jackson - Kansas City - November 17, 2021 - 09:43 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

JAMIE L. INGRAM,  )
607 North Campbell Street  )
Pleasant Hill, Missouri 64080  )
  )
                Plaintiff,  )
  )
vs.  )      Case No. _____
  )      Division _____
DICK'S SPORTING GOODS, INC.,  )
**Serve Registered Agent:**  )
        CSC-Lawyers Incorporating Services  )
        Company  )
        221 Bolivar Street  )
        Jefferson City, Missouri 65101  )
  )
                Defendant.  )

## PETITION FOR DAMAGES
### (Case Type Code: TJ)

COMES NOW Plaintiff Jamie L. Ingram, by and through counsel, and for her Petition against Defendant Dick's Sporting Goods, Inc. for employment discrimination and retaliation in violation of the Missouri Human Rights Act (hereafter "MHRA"), Rev. Stat. Mo. § 213.010, *et seq.*, and in violation of the Missouri Whistleblower Protection Act (hereafter "WPA"), Rev. Stat. Mo. § 285.575, *et seq.*, and in retaliation for her exercise of rights under Missouri Workers' Compensation Law, in violation of § 287.780 of the Revised Statutes of Missouri and Missouri public policy, states and alleges as follows:

### PARTIES

1.      Plaintiff Jamie L. Ingram is an individual residing in the State of Missouri, at 607 North Campbell Street, Pleasant Hill, Missouri 64080. Plaintiff was employed by Defendant

beginning on or about November 3, 2004 and continuing until her wrongful termination on or about December 3, 2020.

2.      Defendant Dick's Sporting Goods, Inc. is a foreign for-profit corporation doing business in the State of Missouri including at its place of business located in Jackson County, Missouri where Plaintiff was employed at the time of her wrongful termination.

3.      At all relevant times, Defendant was an "employer(s)," as defined by the MHRA, the WPA, and Missouri common law, and thus Defendant is liable to Plaintiff under the MHRA, the WPA, and otherwise according to statutory and common law.

**Jurisdiction and Venue**

4.      This Court has personal jurisdiction over Defendant because the Defendant is doing business in the State of Missouri, including Jackson County, Missouri, where the Plaintiff was employed and otherwise Defendant has sufficient minimum contacts with Missouri to confer jurisdiction on this Court.

5.      Venue is proper in this Court pursuant to Mo. Rev. Stat. § 213.111.1 because Defendants engaged in unlawful discriminatory and retaliatory practices in Jackson County, Missouri.

6.      Venue and Jurisdiction are further proper in this Court because Defendant engaged in the wrongful conduct that forms the basis of this lawsuit, and the causes of action accrued, in Jackson County, Missouri. *See* Mo. Rev. Stat. § 508.010.

**Background Facts and Exhaustion of Administrative Remedies**

7.      Plaintiff was employed by the Defendant for over 16 years, beginning on or about November 3, 2004, and continuing until her wrongful termination from her final position as Loss Prevention Manager on or about December 3, 2020.

2

8.      Throughout her employment, Plaintiff performed all duties of her positions as required, exceeded the expectations of her positions and received promotions, praise, raises, and excellent reviews for her work.

9.      Plaintiff is a Caucasian (white) female.

10.     Beginning in late 2019 a younger, male store manager was hired and he created and perpetuated a sexually and racially hostile and harassing work environment lacking in integrity and impacting the terms and conditions of Plaintiff's employment.

11.     The hostile and harassing work environment included discriminatory and retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in Plaintiff's role in Loss Prevention, undermining of her job performance and other negative job actions.

12.     Plaintiff complained about the hostile and harassing work environment and gave Defendant notice of her severe emotional distress and anxiety resulting from the illegal harassment and the illegal discriminatory and retaliatory conduct of the store manager to upper district and regional management in operations, loss prevention and human resources.

13.     Plaintiff also reported concerns that Defendant was violating federal firearms laws and regulations related to licensure, purchase, reporting and related legal and public policy requirements.

14.     Following her legally protected complaints, Plaintiff was subjected to illegal retaliation including a further and heightened hostile work environment, false performance complaints, false discipline, an investigation into false complaints that she was improperly targeting shoplifters based on race or unconscious bias, and ultimately, she was terminated for illegal, discriminatory and retaliatory reasons.

3

15.      Prior to and including her wrongful termination, Plaintiff experienced a pattern and practice of disparate treatment in the terms and conditions of her employment before her termination particularly as compared with male employees and/or non-white employees who were similarly situated, a hostile work environment, false performance criticisms, and her wrongful termination due to her sex and/or race discrimination and/or retaliation for reporting illegal and discriminatory treatment by Defendant, for reporting violations of Missouri law and public policy, or for exercising her rights under Missouri Workers' Compensation law.

16.     Plaintiff's treatment is representative of the type of discriminatory and retaliatory treatment that Defendant engages in against female and/or employees based on race, or those who exercise their rights in favor of male and/or different race, less qualified employees.

17.     The true reasons for the discriminatory and retaliatory employment actions of Defendant against Plaintiff and all those who are similarly situated, including but not limited to her wrongful termination, a hostile and harassing work environment and those adverse employment actions set forth above, were illegal sex and/or race discrimination and retaliation and/or retaliation against her in violation of public policy, and/or retaliation for exercising her rights under Missouri Workers' Compensation Law.

18.     Defendant's adverse actions were taken without any legitimate reason and in violation of the law and less-qualified, male and/or non-white employees, and/or those who had not complained about discrimination or violations of Missouri law and public policy were treated more favorably than Plaintiff.

19.     Defendant's actions constitute illegal sex and/or race discrimination, and/or illegal retaliation against Plaintiff in the terms and conditions of her employment in violation of the MHRA and/or Missouri public policy, or Missouri Workers' Compensation law.

4

20. On or about February 8, 2021, Plaintiff timely filed a charge of race and/or sex discrimination, and retaliation against Defendants with the Missouri Commission on Human Rights ("MCHR"). (Attached as Exhibit A).

21. On or about August 19, 2021, the MCHR issued its Notice of Right to Sue to Plaintiff. (Attached as Exhibit B).

22. This lawsuit was filed within 90 days of the MCHR's issuance of its Notice of Right to Sue to Plaintiff.

23. Plaintiff has met all deadlines and has satisfied all procedural, administrative, and judicial prerequisites to filing suit.

## COUNT I – MHRA DISCRIMINATION

24. Plaintiff incorporates by reference the allegations of paragraphs 1 through 23 above.

25. Defendant discriminated against Plaintiff on the basis of her sex and/or race in the terms and conditions of her employment, by subjecting her to a sexually and racially hostile and harassing work environment, discriminatory and retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in her role in loss prevention, undermining her job performance, false performance criticisms, false allegations of bias, and ultimately causing her wrongful termination in favor of a substantially less qualified male and/or non-white employees without any legitimate reason and in violation of Defendant's policies and procedures.

26. Defendant subjected Plaintiff to illegal sex and/or race harassment, including a hostile work environment and discrimination, and/or illegal retaliation as set forth herein and it

5

did not take similar adverse job actions against similarly situated employees, including less qualified male and/or non-white employees and other similarly-situated employees.

27.    Plaintiff's sex and/or race was a contributing and/or motivating factor in Defendant's intentional decision to discriminate against her in the terms and conditions of her employment as set forth herein including, but not limited to, a sexually and racially hostile and harassing work environment, discriminatory and retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in her role in loss prevention, undermining her job performance, and false performance criticisms, false allegations of bias, and her wrongful termination.

28.    Plaintiff and other similarly-situated employees of Defendant experienced a continuing pattern and practice of discrimination based on sex and/or race discrimination in the terms and conditions of her or their employment with Defendant.

29.    Defendant knew, or should have known, of the illegal sex and race harassment and discrimination against Plaintiff and other similarly-situated employees.

30.    Defendant failed to take prompt and appropriate corrective action to end the sexual and racial harassment and discrimination against Plaintiff and other similarly-situated employees.

31.    Defendant failed to make good faith efforts to enforce its policies to prevent harassment and discrimination against its employees, including Plaintiff.

32.    Defendant harassed and discriminated against Plaintiff in the terms and conditions of her employment because of her sex and/or race as set forth above, including by taking no appropriate action to remedy its illegal conduct and by terminating her employment for false

6

alleged reasons in favor of similarly-situated employees who were not in the protected classes like Plaintiff.

33.     As a direct and proximate result of the continuing pattern and practice of sex and/or race harassment and discrimination directed toward her or disparate treatment of her and of the Defendant's termination of her, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

34.     Defendant's actions and conduct were willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the MHRA, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and to deter it from like conduct in the future.

35.     Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action, and such fees and expenses are recoverable from Defendant under the MHRA.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I, and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, pre-judgment and post-

judgment interest, equitable relief as appropriate, including but not limited to reinstatement, front pay, and an injunction restraining the Defendant from future illegal actions, and any such other relief as the Court deems just and proper.

## COUNT II – MHRA RETALIATION

36.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 35 above.

37.     Plaintiff had a good faith, reasonable belief that Defendant was engaging in unlawful employment practices by subjecting her to a sexually and racially hostile and harassing work environment, discriminatory and retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in her role in loss prevention, undermining her job performance, false performance criticisms, false allegations of bias, including violations of laws prohibiting sex and/or race harassment and discrimination, and she reported her concern and opposition to these unlawful practices to Defendant.

38.     Defendant retaliated against Plaintiff in the terms and conditions of her employment because of her report of and/or opposition to unlawful employment practices, including, but not limited to, by taking no appropriate action to remedy the illegal conduct, by continuing to subject her to a harassing and discriminatory work environment in the form sexually and racially hostile and harassing conduct, discriminatory and retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in her role in loss prevention, undermining her job performance, false performance criticisms, false allegations of bias, including false allegations of racial profiling or discrimination, and her discriminatory and retaliatory

8

termination in favor of a less qualified male and/or non-white employees, without any legitimate reason and in violation of Defendant's policies and procedures.

39.     Plaintiff's opposition to Defendant's unlawful employment practices was a contributing and/or motivating factor in Defendant's decision to retaliate against her in the terms and conditions of her employment.

40.     As a direct and proximate result of Defendant's illegal retaliatory actions, Plaintiff has sustained damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

41.     Defendant failed to make good faith efforts to enforce its policies to prevent discrimination and retaliation against its employees, including Plaintiff.

42.     Defendant's conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the MHRA, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and to deter it from like conduct in the future.

43.     Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action, which fees and expenses are recoverable from Defendants under the MHRA.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II, and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and

benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, pre-judgment and post-judgment interest, equitable relief as appropriate, including but not limited to reinstatement and an injunction restraining Defendants from future retaliatory actions, and any such other relief as the Court deems just and proper.

### COUNT III – RETALIATION IN VIOLATION OF MISSOURI PUBLIC POLICY

44.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 43 above.

45.     Plaintiff had a good faith, reasonable belief that the Defendant was engaging in illegal and/or improper conduct in violation of federal firearms laws and regulations related to licensure, purchasing, reporting and related legal and public policy requirements.

46.     Defendant's violations included violations of the federal firearms removal process – directly regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), including but not limited to, 18 U.S.C. 923(g)(4) and 27 C.F.R. 478.127.

47.     Once firearms are removed from Defendant's stores, all firearms documents and licenses must be removed within 30 days. All 4473s (federal firearms purchase application forms), must be removed in a specific way and sent to "ATF Records Retention" in West Virginia.

48.     The FFL – Federal Firearms License must be sent to the head of LP Firearms for Defendant the date the 4473s are sent out of Defendant's store.

10

49.     Failure to complete this process properly violates federal law and may result in fines and loss of Federal Firearms Licensing privileges and these laws and regulations are intended to promote gun safety and reduce crime in or around the communities where Defendant operates, including in the State of Missouri.

50.     While Plaintiff was conducting an inventory preparation walk at one Defendant's store in Sept 2020, she found the 4473s in the old gun stockroom after the firearms had been removed for several months.

51.     Another employee who had been an employee of Defendant for years expressed his shock and concern that the 4473 files were still at the store.

52.     Plaintiff reported these violations to her manager, the District Loss Prevention Manager. She reported that Defendant should not have sent the FFL out until the 4473s were sent out and expressed her concern that this was a big legal problem because this was not completed and the forms needed to get shipped out.

53.     Plaintiff also informed the District Loss Prevention Manager that the FFL should not go out until the same day the 4473s are shipped out. She further expressed to the DLPM that she was not comfortable completing the process and signing off on the paperwork with her name since the legally required timeline had not been followed, and Defendant was not in legal compliance with the firearm regulations.

54.     Plaintiff also reported her concerns that Defendant's other stores may be in the same situation of violating federal firearms laws.

55.     Plaintiff reported her opposition to Defendant's illegal and/or improper conduct regarding violating federal firearms laws and regulations related to licensure, purchasing,

11

reporting, return of firearms and related legal obligations for Defendant, and she refused to participate in such violations.

56. Defendant retaliated against Plaintiff in the terms and conditions of her employment because of her opposition to and reporting of reasonable good faith concerns with actual violations of federal firearms regulations including as set forth above and herein, including but not limited to, by subjecting her to a harassing and discriminatory work environment, retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in her role in loss prevention, undermining her job performance, false performance criticisms, false accusations of bias, and her discriminatory and retaliatory termination for false alleged reasons.

57. Plaintiff's opposition to and reporting her concerns with Defendant's violations of federal firearms regulations and/or her refusal to participate in actions in violation of federal firearms regulations was or were a contributing and/or motivating factor and/or but for cause in Defendant's decision to retaliate against her in the terms and conditions of her employment.

58. As a direct and proximate result of such retaliation and her termination, Plaintiff has sustained damages and is entitled to recover compensation for past and future lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

59. Defendant's disparate and retaliatory treatment of Plaintiff in the terms and conditions of her employment was intentional, willful, and malicious and done pursuant to Defendant's policy, custom, or business practice designed and intended to punish her for

12

asserting her rights and reporting her concerns with violations of Missouri law and public policy and refusing to participate in such violations, and Defendant intended to discourage other employees from doing the same in the future, all in willful and conscious disregard of Plaintiff's rights under the law, thus justifying an award of liquidated and/or punitive damages in an amount sufficient to punish Defendant and to deter it from like conduct in the future.

60.     Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count III, and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, liquidated and/or punitive damages, all costs including reasonable attorneys' fees, pre-judgment and post-judgment interest, equitable relief as appropriate, including but not limited to reinstatement and an injunction restraining Defendant from future retaliatory actions, and any such other relief as the Court deems just and proper.

## COUNT IV – WORKERS' COMPENSATION RETALIATION

61.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 60 above.

62.     Plaintiff engaged in protected activity under Missouri Worker's Compensation Law and Missouri public policy, including but not limited to by notifying Defendant of her work-related occupational injuries incurred during her employment with Defendant and/or

13

otherwise seeking protection or benefits under such laws.

63. Plaintiff was employed by Defendant beginning in 2004 and prior to the work injuries she experienced while employed by Defendant.

64. During her employment with Defendant including in 2019 and 2020 prior to her wrongful termination, Plaintiff was subjected to an illegal hostile and harassing work environment by a new store manager that caused unusual and extraordinary emotional distress, mental distress and anxiety resulting from the conduct of Defendant's managers, employees and/or agents directed toward Plaintiff.

65. For example, the new Store Manager would come to work intoxicated and harass Plaintiff and he would also send "drunk texts" attacking Plaintiff for her attempts to enforce company policies on shrink and loss prevention.

66. The store manager further made loud, aggressive negative statements to and about Plaintiff, such as shouting at her "you are the most negative person in here, all you do is cause problems, you don't do your job, you suck at your job and you might as well go back to Leawood!"

67. Plaintiff repeatedly told the District Manager and District Loss Prevention Manager that she was working in a hostile work environment, and she was harassed and abused and felt helpless concerning herself and her career, causing her severe and unusual emotional distress as a result of the harassment of the Store Manager.

68. After further harassment and retaliation, Plaintiff called Defendant's Human Resources manager and reported that she felt harassed, abused, bullied, scared for her job and that she had been forced to endure an extremely hostile work environment for a very long time, resulting in severe and unusual emotional distress.

14

69.     Further, while at work Plaintiff was subjected to unusually hostile, harassing and physically threatening and attacking conduct by customers of Defendant's stores.

70.     In the fall of 2020 Plaintiff repeatedly asked upper management for help with the criminal activity in her store and explained she had no help and there was an extreme lack of response from local police to incidents of criminal activity.

71.     Plaintiff reported to Defendant that her store was not a normal environment, there were crazy hostile people coming into the store, and it was dangerous for Plaintiff and other employees and customers.

72.     For example, Plaintiff called 911 on a shoplifter on a Sunday night and finally hung up on 911 because no one answered. Plaintiff expressed her concern to upper management that she could be injured or killed. Plaintiff explained to Defendant's management that she continued to call 911 six times over the course of forty-five minutes begging the Police Department to send an officer.

73.     Plaintiff explained there was a hostile and aggressive shoplifter harassing customers for rides since the get-a-way driver had left the scene. The shoplifter was attempting to enter customers' vehicles, was kicked out of one customer's vehicle and left a knife inside the vehicle. The shoplifter then came back in the building. It was over two hours later when someone from the police department finally called Plaintiff back to see if she still needed assistance.

74.     Plaintiff expressed to Defendant her extreme concern, and unusual and severe emotional distress she was suffering associated with these work situations.

75.     In early November 2020, Plaintiff tried to talk with a customer she believed had shoplifted before. The shoplifter grabbed some items and headed toward the door of the store. Plaintiff asked another employee to call mall security.

15

76.     The shoplifter yelled threats and obscenities at Plaintiff and called her a "f****ng White B***h" and then physically pushed Plaintiff as she ran out of the store. This incident caused physical and emotional distress and anxiety for Plaintiff which she reported to Defendant

77.     In her last conversation with Defendant's Regional Director of Loss Prevention during the first part of November 2020, Plaintiff expressed her concern that the unusually high criminal "risk" level of her store was causing her severe and unusual mental and physical distress and anxiety because she did not have adequate support from off duty law enforcement officers at the store.

78.     Plaintiff explained that "professional, career shoplifters" operating at her store were hostile and not like other shoplifters in the district, and these same subjects were associated with gang members who were often armed with firearms.

79.     At that time, Plaintiff's store was #21 in the company of overall risk due to the number of reports entered for that location, and it was #1 in the entire company in two categories – number of incidents entered and highest dollars in shoplifting preventions entered.

80.     The Defendant's policy is that its stores with more incidents and higher risk levels should have added security with off duty law enforcement, security cameras, and similar support.

81.     However, Plaintiff received no additional security assistance in spite of the serious risk and extreme emotional and physical distress and anxiety caused by the lack of adequate security at her store and in spite of off duty police officers being placed at lower risk stores with managers more favored by Defendant.

82.     By December 2020, Plaintiff's store had experienced at least three separate gun related incidents within three years. These events impact the "Risk Ranking" of a particular store.

16

83.     Shortly after Plaintiff was terminated, Defendant placed an additional armed off duty police officer as a security guard at her former store.

84.     Plaintiff complained to Defendant about the hostile and illegal environment and the hostile and physically threatening conduct of Defendant's customers, including the work-related anxiety, emotional and physical distress and illness, depression, and mental anguish she was experiencing as a result of Defendant's conduct and resulting from the events she had encountered while in the performance of her job duties.

85.     Defendant was aware of Plaintiff's mental and/or physical work injuries resulting from the hostile and harassing work environment and physical attacks on Plaintiff and threatening conduct as described above.

86.     By objective standards, the amount of work stress Plaintiff experienced due to the hostile and harassing work environment created and tolerated by Defendant was both work-related and was extraordinary and unusual.

87.     A reasonable person in the same or similar position to Plaintiff while employed by Defendant would also have suffered extraordinary and unusual mental and emotional stress and/or physical injuries.

88.     Plaintiff's exercise of rights under Missouri Worker's Compensation Law was a contributing, motivating, and/or but for factor in Defendant's disparate treatment of her in the terms and conditions of her employment as set forth above, including but not limited to by subjecting her to a harassing and discriminatory work environment, retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in her role in loss prevention, undermining her job performance, false performance criticisms, false allegations of bias, and her discriminatory

17

and retaliatory termination for false alleged reasons.

89.     Defendant, including those with knowledge of and/or who were influenced by those who had knowledge of Plaintiff's workplace injuries and her providing notice of the workplace injuries, discriminated and retaliated against Plaintiff because of her workplace injury, her workers' compensation report of the injury, notice of the workplace injury and/or the right of Plaintiff to seek compensation under chapter 287 for the workplace injury including unfairly disciplining Plaintiff and terminating her and the other adverse employment actions set forth above and herein.

90.     Any purported reasons given by Defendant or their agents for the disparate treatment of Plaintiff in the terms and conditions of her employment, including but not limited to the termination of her employment are merely pretextual in nature, made in an attempt by Defendant or its agents to hide the improper retaliatory and/or discriminatory motives for the disparate treatment of Plaintiff for her exercise of rights under Missouri Workers' Compensation Law, in violation of § 287.780 of the Revised Statutes of Missouri and Missouri public policy.

91.     As a direct and proximate result of such retaliation, disparate treatment, and wrongful termination, Plaintiff has sustained damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

92.     Defendant's disparate treatment of Plaintiff in the terms and conditions of her employment, including but not limited to the wrongful conduct set forth above and terminating Plaintiff's employment was intentional, willful, and malicious and done pursuant to Defendant's

18

Electronically Filed - Jackson - Kansas City - November 17, 2021 - 09:43 AM

policies, customs, or business practices designed and intended to punish Plaintiff for asserting her rights under Missouri Workers' Compensation law and Missouri public policy, and to discourage other employees from doing the same in the future, all in willful and conscious disregard of Plaintiff's rights under the law.

93. Defendant's conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and to deter Defendant from like conduct in the future.

94. Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, on Count IV, and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial and thereafter, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement and an injunction restraining Defendant from future illegal and retaliatory actions, and any such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in the Circuit Court of Jackson County, Missouri at Kansas City on all counts and allegations in this Petition.

19

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By  /s/ Eric W. Smith
    Eric W. Smith           MO #47108
    Rik N. Siro             MO #33908
    Athena M. Dickson     MO #55104
    Raymond A. Dake      MO #62829
    Ryan P. McEnaney     MO #70235
    1621 Baltimore Avenue
    Kansas City, Missouri  64108
    816.471.4881 (Tel)
    816.471.4883 (Fax)
    esmith@sirosmithdickson.com (email)
    rsiro@sirosmithdickson.com (email)
    adickson@sirosmithdickson.com (email)
    rdake@sirosmithdickson.com (email)
    rmcenaney@sirosmithdickson.com (email)

**ATTORNEYS FOR PLAINTIFF**

20

Electronically Filed - Jackson - Kansas City - November 17, 2021 - 09:43 AM

| CHARGE OF DISCRIMINATION | AGENCYCHARGE NUMBER _____ |
|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | FEPA<br>EEOC 563-2021-00993 |

MISSOURI COMMISSION ON HUMAN RIGHTS and EEOC

*State or local Agency, if any*

**EXHIBIT**

**A**

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include* |
|---|---|
| Ms. Jamie Ingram | [redacted] |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF |
|---|---|---|
| 607 N. Campbell Street, Pleasant Hill, MO 64080 | | [redacted] |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Dick's Sporting Goods, Inc. | 500+ | 816-321-7003 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 18801 E. 39th Street, Independence, Missouri 64057 | | Jackson |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| X RACE ☐ COLOR X SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>X RETALIATION ☐ AGE ☐ DISABILITY X OTHER: Public Policy/ Whistleblowing | January 1, 2020 to December 3, 2020<br>X CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was employed by the respondent Dick's Sporting Goods, Inc. for over 16 years, beginning on or about November 3, 2004, and continuing until my wrongful termination from my final position as Loss Prevention Manager on or about December 3, 2020. Throughout my employment, I performed all duties of my positions as required, exceeded the expectations of my positions and received promotions, praise, raises, and excellent reviews for my work. I am a Caucasian (white) female.

Beginning in late 2019 a younger, male store manager was hired and he created and perpetuated a sexually and racially hostile and harassing work environment lacking in integrity and impacting the terms and conditions of my employment including discriminatory and retaliatory statements and actions, illegal favoritism directed to other employees, denial of training and advancement, failure to promote, denial of necessary support in my role in loss prevention, undermining my job performance and other negative job actions. I complained about the illegal discriminatory and retaliatory conduct of the store manager to upper district and regional management in operations, loss prevention and human resources. I also reported concerns that Dick's was violating federal firearms laws and regulations related to licensure, purchase, reporting and related legal and public policy requirements. Following my legally protected complaints, I was subjected to illegal retaliation including false performance complaints, false discipline, an investigation into false complaints that I was improperly targeting shoplifters based on race or unconscious bias, and ultimately, I was terminated for illegal, discriminatory and retaliatory reasons.

I am seeking all legal and equitable remedies available to me, including but not limited to, compensation for my lost wages and benefits, compensatory damages for my emotional pain and suffering, damage to my reputation, reinstatement to my position and/front pay and benefits, liquidated damages, punitive damages, and my costs and attorney's fees in this matter.

The above is only a summary of the facts in support of my charge of discrimination and retaliation. I will cooperate fully with the Commission and all other state or federal agencies in providing further information in support of my complaints.

| I want this charge filed with both the EEOC and the State or local Agency, if any, I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br>2-4-2021 | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date 2-4-2021 Charging Party (Signature) | |



MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS **2116-CV25672**
# MISSOURI COMMISSION ON HUMAN RIGHTS

| **MICHAEL L. PARSON**<br>GOVERNOR | **ANNA S. HUI**<br>DEPARTMENT DIRECTOR | **DEREK M. HOLLAND**<br>COMMISSION CHAIR | **ALISA WARREN, PH.D.**<br>EXECUTIVE DIRECTOR |
|---|---|---|---|

August 19, 2021



Jamie Ingram
607 N. Campbell Street
Pleasant Hill, MO 64080
*Via Complainant Attorney Email*

## NOTICE OF RIGHT TO SUE

RE:   Ingram vs. Dick's Sporting Goods, Inc.
      FE-2/21-32832     563-2021-00993

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST.**

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

(continued on next page)

☑
JEFFERSON CITY OFFICE
421 E. DUNKLIN ST.
P.O. BOX 1129
JEFFERSON CITY, MO 65102-1129
PHONE: 573-751-3325
FAX: 573-751-2905

☐
ST. LOUIS OFFICE
111 N. 7TH STREET, SUITE 903
ST. LOUIS, MO 63101-2100
PHONE: 314-340-7590
FAX: 314-340-7238

☐
KANSAS CITY OFFICE
P.O. BOX 1129
JEFFERSON CITY, 65102-1129
FAX: 816-889-3582

☐
SIKESTON OFFICE
106 ARTHUR STREET, SUITE D
SIKESTON, MO 63801-5454
FAX: 573-472-5321

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:   1-800-735-2966 (TDD)   Relay Missouri: 711
www.labor.mo.gov/mohumanrights       E-Mail: mchr@labor.mo.gov

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri. Any such petition must be filed in the Circuit Court of Cole County.

Respectfully,

Alisa Warren, Ph.D.
Executive Director

Dick's Sporting Goods, Inc.
Human Resources Director
18801 E. 39th Street
Independence, MO 64057

Michelle A. Haughey, PP, PLS
Siro Smith Dickson, PC
1621 Baltimore Avenue
Kansas City, MO 64108
*Via Email*

☑ **JEFFERSON CITY OFFICE**
421 E. DUNKLIN ST.
P.O. BOX 1129
JEFFERSON CITY, MO 65102-1129
PHONE: 573-751-3325
FAX: 573-751-2905

☐ **ST. LOUIS OFFICE**
111 N. 7TH STREET, SUITE 903
ST. LOUIS, MO 63101-2100
PHONE: 314-340-7590
FAX: 314-340-7238

☐ **KANSAS CITY OFFICE**
P.O. BOX 1129
JEFFERSON CITY, 65102-1129
FAX: 816-889-3582

☐ **SIKESTON OFFICE**
106 ARTHUR STREET, SUITE D
SIKESTON, MO 63801-5454
FAX: 573-472-5321

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/mohumanrights        E-Mail: mchr@labor.mo.gov

Electronically Filed - Jackson - Kansas City - November 17, 2021 - 09:43 AM